THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUBEN ALCAZAR, Defendant-Appellant.

First District (1st Division) No. 86—0330

Opinion filed April 18, 1988.—Rehearing denied September 8, 1988.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, defendant, Ruben Alcazar, was convicted of the voluntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—2) of Alejandro Bahena and the unlawful use of a weapon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(7)) and sentenced to concurrent prison

terms of seven years and four years, respectively. On appeal, defendant contends that: (1) the State failed to prove beyond a reasonable doubt that it was unreasonable for defendant to have believed that his use of deadly force was justified; (2) the trial court violated defendant's statutory right to a speedy trial when it allowed the State to add the unlawful use of a weapon charge after more than 120 days had elapsed since the date defendant had been taken into custody; and (3) the trial court abused its discretion in sentencing defendant by failing to consider defendant's rehabilitative potential. For the following reasons, we affirm defendant's conviction and the sentence imposed for voluntary manslaughter and reverse the conviction and sentence for unlawful use of a weapon.

The record sets forth the following facts which are relevant to this appeal. On the evening of June 9, 1985, defendant and two of his friends, Marshall Jiminez and Frankie Rodriguez, were standing outside of the entrance to defendant's apartment building at 177 Wildwood, Wheeling, Illinois, when a verbal argument ensued between defendant and Alejandro Bahena. Apparently, defendant and Alejandro had been feuding with each other for over a year regarding the use of certain parking spaces in the apartment complex. That night Alejandro admitted that he had been the one who had slashed the tires on defendant's car a few days earlier. Angered by the admission, defendant went into his apartment to get a sawed-off shotgun, which he concealed under a black karate-style robe he was wearing. Defendant then rejoined Marshall and Frankie and was later joined by Eduardo Ochoa. There is conflicting testimony as to whether defendant showed the gun to his friends at this point. However, the verbal altercation continued between defendant and Alejandro.

Defendant then told his friends to go home. As Eduardo walked by Alejandro and his friends, a fight broke out. There is conflicting testimony as to whether Eduardo ran back to defendant or whether defendant walked up to Alejandro. In either event, defendant showed Alejandro the gun, and the name-calling continued as defendant backed up toward his own apartment building. As Alejandro and his friends followed defendant toward defendant's apartment building, Alejandro kept taunting defendant to use the gun. There was conflicting testimony as to whether Alejandro had been drinking prior to the altercation.

When defendant and Frankie reached defendant's apartment building, Ernesto Eloiza, defendant's father-in-law, was at the front entrance door to the building. Ernesto testified that Alejandro threatened to kill defendant, but he did not see any weapon. After defend-

ant and Frankie entered the vestibule of the apartment building, Ernesto attempted to hold the front entrance door shut from the inside to prevent Alejandro from entering the building. However, Alejandro managed to push open the door and step into the building. At that point, defendant shot and killed him.

There is conflicting testimony as to where defendant was standing at the time he shot Alejandro. Frankie had told the police that defendant had been on the stairs near the entrance, but later stated that he and defendant had agreed to say that defendant was on the second landing. Ernesto testified that defendant was on the stairs. Juan Malgoza testified that defendant was on the stairs, approximately six feet from the door to his own apartment unit. In defendant's oral statement to the police, he stated that he had been on the second-floor landing, but later stated that he was on the stairs near the front entrance to the building. It was stipulated by the parties that no blood was found inside the front entrance door. Rather, the bloodstains were outside the door, indicating that defendant had shot Alejandro just as he pushed open the door, causing Alejandro to fall backward into the bushes near the front stoop.

At trial, defendant admitted to killing Alejandro, but claimed that it was in self-defense. Although a knife was found next to Alejandro's body, there is conflicting testimony as to whether Alejandro was armed with a knife at the time of the shooting. Following closing arguments, the trial court found defendant guilty of voluntary manslaughter and unlawful use of a weapon and entered judgment on the verdict. The trial court then denied defendant's motion for a new trial and, after hearing arguments in aggravation and mitigation, sentenced defendant as indicated. Defendant's timely appeal followed.

Defendant first contends that the trial court erred in finding that his belief that he was in imminent danger of death or great bodily harm when Alejandro pushed open the front entrance door of his apartment building was unreasonable. Defendant argues that in finding him guilty of voluntary manslaughter, the trial court implicitly found that Alejandro had been the aggressor and that defendant had not possessed the intent to commit an illegal act. Defendant further argues that in viewing the circumstances which surrounded the shooting, it is evident that he fired the single shot "to protect himself, his loved ones and his home from the deceased's violent intrusion."

In response, the State contends that the argument between defendant and Alejandro which precipitated the shooting was strictly verbal and not physical. The State admits that Alejandro's entry into the apartment building may have necessitated the use of nondeadly

force, but that defendant's intentional use of deadly force at the moment Alejandro opened the front entrance door was "an unreasonable response to a nondeadly attack."

Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 7—1) provides:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

■■ ■ To establish a defense of self-defense the defendant must show that: (1) unlawful force was threatened against him; (2) he was not the aggressor; (3) he believed the danger of harm was imminent; (4) force was necessary to avert that danger; and (5) the amount of force was necessary. (*People v. Lenzi* (1976), 41 Ill. App. 3d 825, 335 N.E.2d 153; *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 240 N.E.2d 150.) Once these elements are established, the burden of proof shifts to the State to prove beyond a reasonable doubt that defendant did not act in self-defense (*People v. Lenzi* (1976), 41 Ill. App. 3d 825, 335 N.E.2d 153) by showing that defendant's belief that he was in danger of imminent harm was unreasonable. The determination as to whether a killing was justified under self-defense principles depends upon the surrounding facts and circumstances and is a question of fact for the trier of fact (*In re S.M.* (1981), 93 Ill. App. 3d 105, 416 N.E.2d 1212) which will not be set aside by the reviewing court unless the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. *People v. Polk* (1979), 70 Ill. App. 3d 903, 388 N.E.2d 864; *People v. Smith* (1978), 58 Ill. App. 3d 784, 374 N.E.2d 1285.

In support of his contention that his belief that he was in imminent danger of death or great bodily harm was reasonable and the use of deadly force was necessary, defendant relies upon *In re S.M.* (1981), 93 Ill. App. 3d 105, 416 N.E.2d 1212. In *S.M.*, respondent, age 14, armed with a gun he intended to use later that evening for raccoon hunting, went to his high school to meet some friends after a school dance. While respondent was talking to his friends in the parking lot, a station wagon with four occupants drove to the end of the parking lot, turned around, and proceeded to head toward respondent. Respondent yelled an obscenity at the four occupants of the car.

When the car stopped, respondent apologized for the remark. Michael Gale then got out of the car and approached respondent, who started to back away. When Gale continued to follow him, respondent pulled out his gun. At that point, Mike Truppa and Rick Johnson also got out of the car.

Respondent continued to back up further into the fenced parking lot with Gale and Truppa following him, joined by Robert Paulish and Peterson. The pursuers then began to throw objects, such as a flattened tin can and a piece of asphalt, at respondent. During this time, respondent kept telling them to stay away, but they continued to approach him. When respondent had backed up to the fence, the four attackers formed a semicircle around him. Respondent then broke through the group and started to run, yelling to the onlookers to get help. When the attackers pursued him, respondent fired a warning shot. There were four versions as to the events that followed, but the result was that respondent shot and killed Truppa and Paulish and wounded Peterson and Gale. Following trial, respondent was adjudged delinquent for the commission of two counts of voluntary manslaughter and two counts of aggravated battery.

On appeal, the reviewing court reversed the judgment with respect to the two counts of voluntary manslaughter and aggravated battery and remanded the cause on other grounds. In reaching its decision, the court found the following facts determinative of its conclusion that the evidence had failed to prove beyond a reasonable doubt that respondent had not acted in self-defense; (1) respondent had tried to avoid confrontation by apologizing for swearing and immediately began to retreat; (2) the attackers had not been discouraged by respondent's gun; (3) respondent had made repeated efforts to flee, never standing his ground or advancing toward them; (4) even when cornered, respondent had not fired, but had tried to flee; (5) respondent had fired a warning shot; (6) even when they had been shot, the attackers had continued to advance; (7) the attackers were older and physically larger than respondent; (8) respondent had been outnumbered four to one; and (9) all four attackers had been drinking.

Although there are some similarities between *S.M.* and the present case, the similarities are minor when compared to the distinctions. In both situations, the defendant had been armed, had brandished his weapon, and had backed away from the victim or victims. However, in the present case, defendant had backed away only after he had provoked Alejandro by calling him names and brandishing the shotgun. In addition, defendant had gone to his apartment purposefully to get the shotgun because he had been angered by Alejandro

and his friends. He then returned to the scene and continued the verbal altercation. There is no evidence to suggest that defendant was in danger of imminent harm at the time that he had armed himself. By contrast, in *In re S.M.*, defendant had been armed to go raccoon hunting; he had not been looking for a fight. Further distinctions include the fact that although defendant in the present case backed away from Alejandro, he did so while continuing to provoke Alejandro with continued screaming and taunting with the gun. Also, once inside the apartment building, defendant stood his ground and was ready to fire should Alejandro enter the building door. In addition, defendant was never cornered. The record indicates that he had had reasonable alternatives to firing. For example, he could have entered his apartment unit and locked the door or exited through the building's back door and driven away in his car. In fact, the latter is exactly the course of action taken by defendant and his friend after the shooting. Finally, defendant was not outnumbered. The evidence indicates that Alejandro's friends were trying to restrain him, not to encourage or to help him.

■ The foregoing analysis also indicates that defendant has failed to prove the fourth and fifth elements necessary to establish self-defense: the force must have been necessary to avert the danger and deadly force must have been necessary. As discussed, unlike in *S.M.*, defendant was not being physically attacked and was neither outnumbered nor placed in a no-exit position. Further, once inside his apartment building, defendant reverted to the role of aggressor and remained on the stairs, ready to shoot as soon as Alejandro pushed open the door. The evidence clearly shows that Alejandro never fully entered the vestibule before he was shot. We find these circumstances similar to those in *People v. Smith* (1978), 58 Ill. App. 3d 784, 374 N.E.2d 1285. In *Smith*, defendant's parked car was bumped by a car being parked behind his. Defendant was not in his car at the time, but the bump set off his car alarm. When defendant walked over to his car to shut off the alarm, he had a verbal altercation with the driver of the other car. Defendant then shot the driver and drove away. Defendant claimed that he had shot the driver because the driver had threatened to stab him with a screwdriver and had attempted to open his car door to get out. In upholding the conviction of manslaughter, the *Smith* court noted that, assuming defendant had observed a weapon and had seen the car door open, he had paused at the most only a few seconds before using deadly force. The *Smith* court reasoned that this instantaneous reaction did not support a claim of self-defense. Similarly, in the present case, Alejandro had merely pushed

open the door to the apartment building when defendant shot him.

We further find defendant's reliance on *People v. Morris* (1987), 162 Ill. App. 3d 1046, and *People v. Eatman* (1950), 405 Ill. 491, 91 N.E.2d 387, unpersuasive of his argument that he was entitled to use deadly force in defense of his dwelling. In *Morris*, defendant walked over to the victim and a friend who were arguing loudly in front of defendant's apartment and asked them to keep their noise down. The victim, who had been drinking, cursed defendant, and when defendant turned to walk away, told him not to turn his back on him. Defendant told the victim that he was not going to do anything to him and for the victim to go about his business. When defendant turned around again to enter his apartment, the victim struck him from behind. A fight ensued which the victim lost. Defendant then went inside his apartment and the victim went home. Shortly thereafter, the victim, allegedly armed with a gun, returned to defendant's apartment, entered the vestibule, and allegedly fired his gun in the direction of the stairway. Defendant saw his sister fall. Then the victim allegedly saw defendant and aimed at him. However, before the victim could shoot, defendant shot him. Following a jury trial, defendant was convicted of voluntary manslaughter. On appeal, the *Morris* court reversed and remanded the cause on the grounds that the jury had not been given the defense of dwelling instruction.

We find *Morris* factually distinguishable from the case at bar. In *Morris*, the victim was fully inside the building and there was evidence to suggest that the victim had fired a shot in the direction of defendant's apartment while in the vestibule of the building. Further, defendant and another witness heard defendant's sister yell, "Don't shoot me." In the present case, Alejandro had barely pushed open the front entrance door when he was shot, was not armed with a gun, and the evidence suggests that defendant was ready and waiting to shoot Alejandro whether or not Alejandro threatened him with death or great bodily harm.

In addition, we find *People v. Eatman* (1950), 405 Ill. 491, 91 N.E.2d 387, equally unpersuasive of defendant's argument that his use of force was justified by the fact that he was defending his dwelling. In *Eatman*, defendant and his wife occupied the south front second-floor apartment of an apartment building. Defendant's apartment was separated from the north front apartment by a public hallway. A seven-foot long vestibule opened from the main hall, at the end of which was a common bathroom for the two second-floor apartments. There was a locked door to each apartment from the vestibule and the vestibule was closed off from the main hall by a locked door. An

argument ensued between defendant and his landlady, who was accompanied by a companion. After being assaulted, defendant stabbed and killed the landlady's companion. Following a bench trial, defendant was convicted of manslaughter. On writ of error, the supreme court reversed the conviction on the grounds that the evidence had failed to establish defendant's guilt beyond a reasonable doubt. In reaching its decision, the *Eatman* court found that the vestibule constituted part of the dwelling for purposes of defendant's argument that he had acted in defense of his dwelling. In our view, *Eatman* does not support the contention that all vestibules constitute part of the dwelling. (See *People v. Morris* (1987), 162 Ill. App. 3d 1046, 1057 (Lorenz, J., concurring).) In *Eatman*, the vestibule was inaccessible to the public and could only be entered through a locked doorway. By contrast, in the present case, the vestibule of defendant's apartment building was readily accessible to the general public.

Accordingly, based on the facts and circumstances of the present case, we conclude that there was ample evidence from which the trial judge could have determined that defendant's belief that he had to use deadly force was unreasonable.

■ Next, defendant maintains that the trial court's decision to allow the State to add an additional count to defendant's information more than 120 days after defendant had been taken into custody violated defendant's right to a speedy trial as set forth in section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a)), which states, in pertinent part:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***."

Preliminarily, we note that there is no issue on appeal as to whether defendant's right to a speedy trial was violated with respect to the murder charge. Rather, the issue concerns only the charge of unlawful use of a weapon. Defendant was arrested on June 9, 1985, and he was charged by information with the offense of murder on August 16, 1985. During the period between June 9 and August 16, the record indicates that the parties were negotiating for a reduced charge. Trial commenced on December 1, 1985, at which time the State sought leave to add a second count, charging unlawful use of a weapon. Defense counsel objected on the ground that defendant's right to a preliminary hearing on the second offense was being violated and that it was too late to file an information. The court allowed the State to file its additional count.

On appeal, defendant argues that although he had agreed to certain continuances regarding the murder charge, those continuances cannot be attributed to the new and additional charge, which was not before him at the time he had agreed to continuances. Thus, defendant asserts, because trial did not commence on the unlawful use of a weapon charge until more than 120 days after he had been taken into custody and he had not agreed to any continuance with respect to that charge, his statutory right to a speedy trial had been violated and the conviction for that charge must be reversed. In support of his position, defendant relies upon *People v. Williams* (1981), 94 Ill. App. 3d 241, 418 N.E.2d 840, and *People v. King* (1972), 8 Ill. App. 3d 2, 288 N.E.2d 672.

Although *Williams* and *King* support the legal principles relied upon by defendant, they are inapplicable to defendant's situation. Unlike in *Williams* and *King*, defendant has waived his right to discharge on speedy trial grounds by failing to apply for discharge prior to his conviction and by failing to raise the speedy trial issue in his post-trial motion. *People v. Pearson* (1981), 88 Ill. 2d 210, 430 N.E.2d 990; *People v. Perez* (1981), 100 Ill. App. 3d 901, 427 N.E.2d 229.

■ Defendant next contends that defense counsel's failure to move for discharge under the speedy trial statute prior to conviction deprived him of his sixth amendment right to effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) In making this showing, defendant must establish that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

■ In the present case, defendant argues that no justification exists for his counsel's failure to move for a speedy trial discharge on the unlawful use of a weapon charge. In our view, the record supports defendant's contention that defense counsel's failure to move for a discharge was not a tactical decision. When the State sought leave to add the second count, defense counsel objected on the grounds that addition of the count at that late date deprived defendant of his right to a preliminary hearing. While defense counsel's objection indicated an attempt to represent defendant's best interests, we conclude that, under the circumstances of this case, defense counsel's failure to

move for a speedy trial discharge constituted an error in counsel's performance sufficiently grave to prejudice defendant's defense on the unlawful use of a weapon charge. As stated, defendant must show only a reasonable probability that, but for counsel's failure to move for a speedy trial discharge, the result of the proceeding would have been different. In light of the facts that all continuances obtained were obtained prior to the addition of the unlawful use of a weapon charge, and thus could not be attributed to that charge, and the unlawful use of a weapon charge was filed more than 120 days after defendant had been taken into custody, we find that a reasonable probability exists that had defense counsel moved for discharge of the unlawful use of a weapon charge on the ground that it violated the speedy trial statute, the result of the proceeding would have been different. Accordingly, we reverse the judgment and sentence on the unlawful use of a weapon charge.

■ Next, defendant contends that in the event his conviction for the unlawful use of a weapon is reversed, the cause should be remanded for resentencing because the trial court may have been influenced by the unlawful use of a weapon conviction when it imposed the sentence for voluntary manslaughter. (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) In response, the State argues that, pursuant to *People v. Einstein* (1982), 106 Ill. App. 3d 526, 435 N.E.2d 1257, because defendant received a separate sentence for each conviction, rather than a single sentence for all convictions, there is no danger that the sentence for one conviction influenced the other.

In reaching a determination as to whether a cause should be remanded for resentencing when less than all of the convictions have been reversed, the reviewing court must consider whether the trial court may have been influenced by the reversed convictions when it imposed sentences for the remaining offenses. (*People v. Guppy* (1975), 30 Ill. App. 3d 489, 333 N.E.2d 576.) Contrary to the State's position, we recognize that the imposition of separate concurrent sentences does not negate the possibility of influence. (See *People v. Deal* (1979), 69 Ill. App. 3d 74, 387 N.E.2d 21; *People v. Vallero* (1978), 61 Ill. App. 3d 413, 378 N.E.2d 549.) However, in the present case, we find no evidence that the conviction for unlawful use of a weapon influenced the sentencing for the voluntary manslaughter conviction and decline to remand the cause for resentencing on that ground.

■ Finally, defendant contends that the trial court abused its discretion when it imposed a seven-year sentence for voluntary manslaughter and a four-year sentence for the unlawful use of a weapon. In light of our reversal of defendant's conviction and sentence for un-

lawful use of a weapon, we shall address this issue solely with respect to the sentence imposed for the voluntary manslaughter conviction. Specifically, defendant argues that the trial court abused its discretion in imposing the sentence by failing to consider his rehabilitative potential. In support of his position, defendant explains that he was only 22 years old at the time of the offense, had no prior criminal record, was married, had one child, and was gainfully employed. In response, the State argues that the evidence warrants the sentence imposed, noting that defendant, while acting under provocation, had gone to his apartment to get a shotgun, returned to the scene, and continued to provoke Alejandro by calling him names and brandishing the gun.

It is well established that a trial court's sentencing will not be disturbed absent a showing of an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Although the trial court is required to consider rehabilitation as an objective of the sentence (*People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491), defendant's rehabilitative potential is to be given no greater consideration than those facts which establish the seriousness of the offense. Moreover, where mitigation evidence is before the court, absent some evidence to the contrary, it is presumed that the sentencing judge considered all such evidence. *People v. Bergman* (1984), 121 Ill. App. 3d 100, 458 N.E.2d 1370.

In the present case, prior to imposing the sentence, the trial court specifically stated that it had considered the factors in aggravation and mitigation, the arguments by counsel and defendant's oral and written statements made during the sentencing hearing. Thus, in light of the seriousness of the offenses, the relevant statutory sentencing provision (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(4)), and the court's clear statement that it had considered all relevant factors, we conclude that the trial court properly sentenced defendant to a seven-year term of imprisonment for the conviction of voluntary manslaughter.

For the aforementioned reasons, we affirm the voluntary manslaughter conviction and the sentence imposed for that offense and reverse the conviction and sentence with respect to the unlawful use of a weapon charge.

Affirmed in part; reversed in part.

BUCKLEY and MANNING, JJ., concur.