**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220516-U

Order filed May 6, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0516 Circuit No. 17-CF-2343 |
| | ) | |
| MARK T. GRIFFIN, | ) ) | Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice McDade and Justice Peterson concurred in the judgment.

**ORDER**

¶ 1      *Held*: (1) The circuit court's violation of Rule 431(b) did not constitute reversible error where the evidence was not closely balanced. (2) The court did not err in instructing the jury.

¶ 2      Defendant, Mark T. Griffin, appeals his convictions for aggravated battery on a public way. Defendant contends the Will County circuit court committed plain error by failing to ensure that prospective jurors accepted two of the principles described in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and by failing to ask multiple prospective jurors whether they

understood and accepted the principles. Defendant further argues he was denied a fair trial when the court included an optional paragraph concerning deadly force after it instructed the jury on the issue of self-defense or defense of others. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with two counts of aggravated battery (720 ILCS 5/12-3.05(c) (West 2016)) alleging that on November 23, 2017, he made physical contact of an insulting or provoking nature with Anthony Moreno and Christine LaLonde when he struck them "on or about public property." The matter proceeded to a jury trial.

¶ 5        During jury selection, the court began questioning the prospective jurors individually. After questioning 14 jurors individually, the court announced that it had "some questions to ask the whole group," and requested that the jurors answer out loud. The court then asked whether the jurors each understood and accepted that a person accused of a crime is presumed innocent. The court asked whether the jurors understood that a person charged with a crime is not required to prove his innocence nor offer any evidence or testimony on their own behalf. The court then asked, "Do any one of you have any disagreement or argument with these principles?" The court then asked whether the jurors understood that defendant did not have to testify, and that his decision not to testify could not be considered in reaching a verdict. The court asked, "Do you each understand and accept that?" to which the jurors responded, "[y]es." The court then asked, "Does anybody have any disagreement or arguments with any of these principles?" to which the jurors responded, "[n]o."

¶ 6        The parties selected four jurors from the first panel. The court questioned a second panel of 14 jurors individually. The court did not repeat its questions about any general legal principles. Specifically, the court did not ask whether any of the second panel of jurors

2

understood or agreed with the principles that (1) a defendant is presumed innocent, (2) the State must prove a defendant guilty beyond a reasonable doubt, (3) a defendant is not required to offer any evidence or testimony, and (4) if a defendant does not testify it cannot be held against him. Eight additional jurors and an alternate were selected from the second group.

¶ 7 At trial, the following evidence was adduced: an altercation broke out in the parking lot of the Crest Hill Police Department. The altercation arose following a custody dispute between Anthony and Cindy Moreno, who were previously married and had three children together. On November 23, 2017, Anthony was scheduled to drop off the children at Cindy's mother's house for Thanksgiving. Anthony drove to Cindy's mother's house with the three children and his girlfriend, Christine. When they arrived, they observed a vehicle belonging to Cindy's new boyfriend, defendant, parked in the driveway. Upon observing the vehicle, Anthony instructed one child to enter the house, then drove the other two children to the Crest Hill Police Department to complete the exchange.

¶ 8 When Anthony arrived at the police department, he found that it was closed for the holiday. A note posted on the door directed him to call a nonemergency number for assistance, which he did. Christine remained in the car with the children. As Anthony was waiting for the police to arrive to oversee the exchange, Cindy and defendant arrived in their vehicle. Cindy parked her vehicle roughly perpendicular to Anthony's, then exited her vehicle and attempted to open Anthony's car door to retrieve the other two children. Defendant remained in the car. Anthony moved toward Cindy. At that point, Christine exited Anthony's car and defendant exited Cindy's vehicle. A pair of surveillance videos from the police station captured the ensuing altercation.

3

¶ 9        Each of the four participants in the altercation testified. In sum, Cindy and defendant accused Anthony and Christine of initiating the altercation. Anthony and Christine accused defendant and Cindy of both initiating and escalating the violence. According to Cindy, Anthony began punching her in the side and back and Christine pushed her to the ground and pulled her hair. Cindy then called for defendant to help her, and defendant pulled Anthony and Christine off Cindy. Defendant testified that Christine initiated the altercation by pushing Cindy and pulling her hair. On cross-examination, defendant stated that Anthony came after him first, and when asked to indicate on the video when Anthony attacked him, he identified a point in time after he had punched Christine in the face.

¶ 10       Christine was unsure who began pushing first and did not deny pulling Cindy's hair, but stated she could not remember who started the altercation because she was punched directly in the face by defendant. Anthony testified that he did not see Christine pull Cindy's hair until "the middle of the fight maybe." Anthony testified that he did not push or strike anyone at any point, and that the altercation turned physical only once defendant punched Christine in the face.

¶ 11       Officer Timothy Kaplar was dispatched to the Crest Hill Police Department. On arrival, Kaplar observed Anthony and Christine and photographed their injuries. Christine had blood on her face. Kaplar also observed blood and several strands of black hair on the ground of the parking lot. Kaplar interviewed defendant and Cindy. Defendant stated that he was pulling Cindy and Christine apart and denied punching Christine in the face. Kaplar observed fresh cuts and scrapes on defendant's knuckles.

¶ 12       On the surveillance videos it was unclear to what extent, if any, Cindy was attacked by Anthony or Christine. She was not visibly pushed to the ground. The videos depicted minimal physical interaction between Anthony, Cindy, and Christine before defendant arrived. The videos

4

captured defendant punching Christine in the face, knocking Anthony to the ground, and kicking Anthony in the head once he was on the ground. The altercation ended when one child exited Anthony's car and entered Cindy's vehicle. Cindy, defendant, and the child left together, and the other child remained in Anthony's vehicle.

¶ 13    As a result of the altercation, Anthony sustained scrapes and bruises, including two marks on his forehead and one on the back of his head. Christine stated that she saw a "flash of white light" when she was punched and felt blood on her face. She went to the hospital to seek treatment.

¶ 14    At the conclusion of the trial, defendant requested a jury instruction on self-defense or defense of others, arguing he had successfully established a claim for both. The instruction was granted over the State's objection. However, the State requested that the court include the second, optional paragraph of the instruction, which informed the jury when a person is justified in using force that is intended or likely to cause death or great bodily harm. Defendant objected to the inclusion of this second paragraph, arguing that the State neither charged nor produced any evidence that defendant either intended or caused great bodily harm. The second paragraph was provided to the jury over defendant's objection.

¶ 15    Following deliberations, defendant was found guilty of both counts of aggravated battery. Defendant filed a timely posttrial motion arguing, *inter alia*, that the circuit court erred when it included the second paragraph of the self-defense or defense of others jury instruction. The motion was denied, and defendant was sentenced to 24 months' conditional discharge and 12 days in the jail. Defendant appeals.

¶ 16                                              II. ANALYSIS

5

¶ 17    On appeal, defendant alleges that two errors warrant reversal of his convictions. First, defendant contends the circuit court committed plain error by failing to ask each prospective juror whether they understood and accepted principles articulated in Rule 431(b). Second, defendant alleges that the court's inclusion of the optional paragraph concerning deadly force deprived him of a fair trial. We analyze each contention in turn.

¶ 18                              A. Plain Error During Jury Selection

¶ 19                                  1. Rule 431(b) Violations

¶ 20    Defendant first argues the court erred by failing to ask each prospective juror whether they understood and accepted the principles described in Rule 431(b). Specifically, defendant contends that the court erred when it failed to (1) ask whether prospective jurors accepted two of the principles articulated in Rule 431(b), and (2) address its Rule 431(b) inquiries to all prospective jurors. Defendant concedes that he failed to preserve this issue for review, but he alleges the errors amount to reversible plain error because the evidence in the case was closely balanced. See *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 21    Under the plain error doctrine reversal is warranted when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step in the plain error doctrine is to determine whether error occurred. *Id.*

¶ 22    Rule 431(b) states that the court

> "shall ask each potential juror, individually or in a group, whether that juror
> understands and accepts the following principles: (1) that the defendant is

6

presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her ***.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 23    Satisfying Rule 431(b) requires the court to obtain both understanding and acceptance of each of the four principles through a "specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). "[T]here is no requirement that a trial court use the exact language of the rule and the rule does not 'prescribe a precise formula for trial judges to use in ascertaining jurors' prejudices or attitudes.' " *People v. Morris*, 2013 IL App (1st) 110413, ¶ 83 (quoting *People v. Emerson*, 122 Ill. 2d 411, 426-27 (1987)).

¶ 24    Here, the circuit court properly inquired whether the prospective jurors understood each of the four principles. Defendant argues that the court failed to ascertain whether the prospective jurors also accepted the final two principles. However, the record reveals that the court did ask whether the prospective jurors accepted the final principle. As to the third principle, the court asked whether the prospective jurors had "any disagreement or argument with these principles[.]" As noted above, there is no precise formula for ensuring acceptance of the Rule 431(b) principles. See *id.* "[E]nsuring that the potential jurors do not disagree with the *Zehr* principles is tantamount to ensuring that they accept the principles ***." *People v. Brown*, 2019 IL App (5th) 160329, ¶ 16; see also *Morris*, 2013 IL App (1st) 110413, ¶ 83 (confirming that

7

none of the venire disagreed with the four principles after confirming venire's understanding of them complies with Rule 431(b)). Therefore, we find that the court complied with Rule 431(b) where it asked whether the jurors had "any disagreement or argument" with the principles.

¶ 25    Defendant next alleges that the court failed to address all of the jurors ultimately selected, where it only read the pronouncements of law to the first panel. The State contends that the court was speaking to the entire assembled group of prospective jurors when it discussed the Rule 431(b) principles. However, the record does not support the State's position. The court's articulation of the Rule 431(b) principles was immediately preceded and followed by questions directed solely to the initial panel of 14 jurors. The court gave no indication that it was speaking to the other assembled jurors, and it only began addressing the other jurors once it had completed its questioning of the first panel.

¶ 26    A court may satisfy Rule 431(b) by questioning jurors in groups, even by questioning the entire venire at once. *Morris*, 2013 IL App (1st) 110413, ¶ 83 (upholding questioning the entire group of prospective jurors at once where the record was clear that the court was addressing the whole group and sought responses from all). However, the court must "exercise diligence when instructing the jury of the *Zehr* principles." *McGuire*, 2017 IL App (4th) 150695, ¶ 35. As the rule states, the court's method of inquiry must "provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012). Here, the record strongly suggests that the court engaged in a discussion of Rule 431(b) with only the first 14 prospective jurors. Because we find that the court failed to ensure that all additional prospective jurors both understood and accepted the Rule 431(b) principles, we find that the court violated Rule 431(b). See, *e.g.*, *People v. Wilmington*, 2013 IL 112938, ¶ 32. Consequently, we must determine whether the evidence in this case was closely balanced. See

8

*Sebby*, 2017 IL 119445, ¶ 69 ("The only question in a first-prong case, once clear error has been established, is whether the evidence is closely balanced.").

¶ 27                                    2. Closely Balanced Evidence

¶ 28         In determining whether the evidence is closely balanced, "a reviewing court must undertake a commonsense analysis of all the evidence in context." *People v. Belknap*, 2014 IL 117094, ¶ 50. The inquiry involves "an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Sebby*, 2017 IL 119445, ¶ 53. Evidence is closely balanced when, for example, each side presents a credible witness or where the credible testimony of a witness is challenged by evidence that casts doubt on their account of events. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 48. However, "[n]o 'credibility contest' exists when one party's version of events is unrefuted, implausible, or corroborated by other evidence." *Id.*

¶ 29         To prove the charge of aggravated battery on a public way, the State was required to prove that defendant made contact of an insulting or provoking nature with each of the two alleged victims on or about a public property. See 720 ILCS 5/12-3.05(c) (West 2016). Proving self-defense or defense of others requires a defendant to establish that (1) unlawful force was threatened against him or another person, (2) he was not the aggressor, (3) the danger of harm was imminent, (4) force was necessary to avert that danger, and (5) the amount of force was necessary. *People v. Alcazar*, 173 Ill. App. 3d 344, 349 (1988). We have also held that a defendant's beliefs about the necessity of using force in self-defense or in defense of others must be reasonable under the circumstances. *People v. Holman*, 2014 IL App (3d) 120905, ¶ 58.

¶ 30         "Self-defense is an affirmative defense (720 ILCS 5/7-14 (West 2002)) and 'the raising of such a defense necessarily constitutes an admission by the defendant that he committed the

9

crime for which he is being prosecuted.' " *People v. Chatman*, 381 Ill. App. 3d 890, 897 (2008) (quoting *People v. Raess*, 146 Ill. App. 3d 384, 391 (1986)). Therefore, defendant, by the nature of his defense, specifically admitted to committing aggravated battery against Anthony and Christine.

¶ 31       At trial, defendant argued that he was acting in defense of Cindy. However, his testimony was not credible. Defendant initially testified that Anthony became aggressive toward him. Yet defendant was unable to identify *when* Anthony did anything aggressive before defendant punched Christine in the face, and the surveillance videos did not show that Anthony was aggressive toward defendant. Moreover, defendant was untruthful with Kaplar about his role in the altercation. He told Kaplar he merely separated Cindy and Christine. However, surveillance videos clearly captured defendant punching Christine and Anthony.

¶ 32       The defense called Cindy as a witness. However, Cindy's testimony was even less credible. Her testimony about how the altercation began was directly contradicted by defendant's own account and by the video evidence introduced by the State. Cindy testified that she was attacked first by Anthony; defendant testified that she was attacked by Christine. Cindy stated that she was forced onto the ground; defendant testified (and the surveillance videos confirmed) that she was upright. There was therefore not a credibility contest—defendant's account of events was not credible and was unsupported by the evidence. See *Jackson*, 2019 IL App (1st) 161745, ¶ 48.

¶ 33       Regardless of how the altercation began, the videos unequivocally demonstrate that defendant used much greater force than was reasonable or necessary to avert any danger posed by Anthony and Christine. In other words, defendant was also unable to establish the fifth element of a self-defense claim, that the amount of force used was necessary under the

10

circumstances. See *Alcazar*, 173 Ill. App. 3d at 349. "The self-defense concept is to protect person, not pride." *People v. Woods*, 81 Ill. 2d 537, 543 (1980). It was undisputed at trial that defendant punched Christine in the face, knocked Anthony to the ground, and kicked Anthony in the face while he was on the ground. Applying a "commonsense analysis," these actions were an unreasonable response under the circumstances, and the evidence that defendant did not act in self-defense was not closely balanced. See *Belknap*, 2014 IL 117094, ¶ 50.

¶ 34                                          B. Self-Defense Jury Instruction

¶ 35        Finally, defendant alleges that, because he was not charged with inflicting great bodily harm and because there was no evidence produced at trial that he caused great bodily harm, it was reversible error for the court to include the second paragraph of the jury instruction on self-defense concerning the justified use of force likely to cause great bodily harm or death.

¶ 36        Whether the evidence adduced at trial supports a jury instruction is a matter within the circuit court's discretion, and we review the court's decisions about whether to provide a particular instruction for an abuse of discretion. *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). "Abuse of discretion is the most deferential standard of review, second only to no review at all." *People v. Taylor*, 2016 IL App (1st) 141251, ¶ 15. An abuse of discretion occurs when the circuit court's decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Ortega*, 209 Ill. 2d 354, 359 (2004).

¶ 37        The court abuses its discretion with respect to offering jury instructions "if the jury instructions given are unclear, misled the jury, or are not justified by the evidence." *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009). A defendant is entitled to a self-defense or defense of others instruction so long as there is slight evidence adduced at trial to support his theory. *Taylor*, 2016 IL App (1st) 141251, ¶ 11. The State is also entitled to have the jury instructed on its theory of

11

the case if there is any evidence, no matter how slight, to support it. *People v. Barnard*, 208 Ill. App. 3d 342, 349-50 (1991).

¶ 38    The relevant instruction, Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 is titled "Use of Force in Defense of a Person," and its language comes directly from section 7-1(a) of the Criminal Code of 2012, which states:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2016).

¶ 39    The purpose of providing jury instructions is to "fairly, fully, and comprehensively apprise[ ] the jury of the relevant legal principles." *People v. Parker*, 223 Ill. 2d 494, 501 (2006). It is the jury's province to apply those principles and to decide, based on the evidence, between conflicting theories of the case. See *People v. Chatman*, 381 Ill. App. 3d 890, 901 (2008). Where there is evidence that may be interpreted in more than one way, the jury should be apprised of the relevant law so that they may "decide between the conflicting evidence and apply the correct law." *People v. Fleming*, 155 Ill. App. 3d 29, 37 (1987).

¶ 40    Defendant contends that the court properly instructed the jury by providing the first sentence of the instruction, but that it should not have provided the second. In his brief, defendant argues that the force used was not commensurate with the amount of force typically associated with causing death because there is a "long-standing principle in Illinois that death is

not ordinarily contemplated as a natural consequence of blows from bare fists." *People v. Jones*, 404 Ill. App. 3d 734, 748 (2010). The relevant question is not whether the State proved defendant's intent to inflict death or great bodily harm beyond a reasonable doubt, but whether there was "any evidence, no matter how slight" to suggest that defendant used enough force to cause great bodily harm. *Barnard*, 208 Ill. App. 3d at 350. We conclude that there was.

¶ 41 Here, it was for the jury to decide whether defendant acted in self-defense or defense of others and, if he did so, the extent to which his use of force was justified. The force used by defendant had at least the potential to cause great bodily harm. As a case cited by defendant notes, "[i]t has also been recognized that death may be the natural consequence of blows with bare fists where there is a great disparity in size and strength between the defendant and the victim." *Jones*, 404 Ill. App. 3d at 748. It is irrelevant that defendant did not actually cause great bodily harm. The relevant question is whether there was any evidence, "no matter how slight," to suggest defendant may have intended to cause great bodily harm. *Barnard*, 208 Ill. App. 3d at 350. Because there was at least some evidence that defendant *could have* intended to cause great bodily harm, the question of whether he *in fact* intended to cause great bodily harm was properly for the jury to resolve. Accordingly, the circuit court did not abuse its discretion by providing the full jury instruction on the issue of self-defense or defense of others.

¶ 42                                III. CONCLUSION

¶ 43 The judgment of the circuit court of Will County is affirmed.

¶ 44 Affirmed.