THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EVERETT BROWN, Defendant-Appellant.

First District (3rd Division)   No. 1—89—1708

Opinion filed August 28, 1991.

---

*Justice White heard oral arguments in this appeal prior to his retirement. Since that time, Justice Cerda was designated the third member of the panel and he has read the briefs and listened to the tapes.

Randolph N. Stone, Public Defender, of Chicago (Lisa Ottenfeld and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Loren A. Seidner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

After a bench trial, defendant, Everett Brown, was convicted of two counts of second degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2) and sentenced to 10 years' imprisonment. On appeal, defendant asserts that (1) the second degree murder statute is unconstitutional because it shifts the burden of proving an element of murder to the defendant; (2) the second degree murder statute violates due process and equal protection by deterring those convicted of second degree murder from appealing their convictions; (3) he proved by a preponderance of the evidence that he was acting in

self-defense when he shot Lloyd Williams; (4) he was improperly convicted of two counts of second degree murder for only one crime; and (5) the trial court abused its discretion in sentencing him to 10 years' imprisonment.

On November 12, 1988, at approximately 7:30 p.m., defendant, Everett Brown, shot and killed Lloyd Williams. At trial, defendant claimed self-defense. Defendant met Williams through a mutual friend approximately two years before the shooting. A year before the shooting, defendant, Williams, and others were at Greg Cason's apartment, where Christopher Washington and Williams began to argue. Cason got between them and told them to quiet down. Williams asked his friend for a gun, but was refused, so Williams took the gun from him and pushed Cason into Washington. When Washington retreated to a back bedroom, Williams pushed Cason into a bedroom, held him by the collar, pointed a gun toward his head, and fired. Cason fell to the ground, but was not hit. He later found a bullet lodged in the window frame. As Williams was leaving, defendant touched his arm and told him to leave before the police came. Williams turned around with the gun still in his hand and told defendant not to touch him.

A few months before that incident, defendant twice heard Williams bragging that he had killed a Jamaican man. Williams was known to carry a gun and had a reputation for being violent. Detective Carlos Mitchem testified for defendant, stating that Williams had been arrested three times for unlawful use of weapons, but not for shooting anyone. At the time of Williams' death, charges were still pending on a May 4, 1988, charge involving a Mac-10 automatic machine gun. Defendant testified that he had seen Williams with a gun five or six times. In addition, three State witnesses and two defense witnesses besides defendant testified that they had seen Williams with a gun on various occasions and knew of Williams' reputation to be violent.

Two or three weeks before the shooting, Williams and defendant had an argument that escalated into pushing and shoving. Defendant testified that Williams grabbed his hand and bent it back. After releasing his hand, Williams left the apartment, but returned later and began pushing, grabbing, and wrestling with defendant. After about an hour, Williams put defendant in a headlock. Defendant begged for help from the other people present, but no one responded. Williams then grabbed defendant's leg, flipped him into the fireplace, and choked him again. Finally, at the urging of others, Williams released his hold.

On November 10, 1988, there was a fight between Williams and defendant. That night, Williams told defendant he would "kick [his] ass" until defendant paid him money he owed Williams. The two men argued over the money and went outside to fight. No one else was present outside. Defendant testified that Williams punched him four or five times, and the two tussled before the police arrived. Defendant did not say anything to the police because Williams told him not to. Defendant stated that Williams warned him, "I'm going to beat your ass every time I see you" and "the next time I see you, I'm going to bust a cap in your ass." Defendant understood those threats to mean that Williams was going to shoot him. Defendant also testified that Williams told him, "I wish I had brought my pistol" and "you'd better have a pistol because I'll have mine." A State rebuttal witness testified that Williams and defendant came back to the apartment laughing together. Defendant testified that he was given a gun the next night in order to protect himself from Williams. Defendant stated that he was afraid of Williams and believed his reputation for violence.

On November 12, 1988, defendant, Richard Green, and Tyrone Bowie went to Ronald Green's apartment. When Richard Green walked into the living room, he saw Williams, and the two men spoke briefly. Williams saw defendant standing in the doorway and asked him, "[A]re you ready?" When defendant did not respond, Williams asked him again. Defendant muttered "yes." Williams was motioning with both his hands facing the ceiling, and was moving toward defendant. Shaking, defendant pulled out the pistol and kept saying "please, don't make me do this." Speaking and motioning with his hands, Williams continued toward defendant. When Williams bit his lip, defendant stated, he closed his eyes and pulled the trigger because Williams had a habit of biting his lip before he started striking defendant. Richard Green was trying to stop Williams from moving toward defendant and was yelling at defendant to not shoot.

The first time defendant shot, no bullet was fired. When defendant shot again, Williams smiled and clutched his left side, falling toward the couch. As Williams lay half on the couch and half on the floor, defendant shot again, hitting Williams in the left lower back. From the first to the third shot, 10 to 25 seconds passed.

Richard Green testified that he ran to defendant and tried to push him out of the room after the second shot. He then bent over Williams, and defendant pushed him aside, shooting for the third

time. He also testified that defendant pointed the gun at Ronald Green, who tried to push defendant toward the door.

Defendant testified that Williams raised his right hand as he was half-lying on the couch. Thinking that Williams was getting a weapon from the couch area, defendant fired the third shot. He ran out of the apartment and threw the gun in the canal. The next day, he surrendered himself. Defendant conceded that he did not see Williams with a weapon on the day of the shooting.

The cause of death was two gunshot wounds to the lower abdomen and lower back. After closing arguments, the trial court found defendant guilty of two counts of second degree murder based on an unreasonable belief in self-defense. The trial court found that defendant actually believed he was in danger from Williams on the day of the shooting because of Williams' history of carrying firearms, actually using a firearm at least once, three arrests for unlawful use of weapons, and the history of fights between defendant and Williams. The trial court also found, however, that defendant's belief was unreasonable. The trial court stated that the violence between Williams and defendant never escalated beyond fist fights and uncorroborated death threats by Williams. Furthermore, the trial court indicated, Williams was not armed at the time of the shooting; there was no immediate or imminent access to a weapon; and his hands were visible at all times. The State proved beyond a reasonable doubt all the elements of first degree murder and that self-defense did not exist since defendant's belief was not reasonable, the trial court concluded.

Following aggravation and mitigation evidence, the trial court sentenced defendant to 10 years' imprisonment. The trial judge stated that she considered probation, but such a sentence would deprecate the seriousness of defendant's act and would be inconsistent with the ends of justice. The trial court also took into consideration defendant's lack of any criminal history and his caretaking functions for his family.

Defendant asserts on appeal that the second degree murder statute is unconstitutional because it relieves the State of its burden of proving beyond a reasonable doubt every element of the offense, and it violates due process and equal protection rights. The State contends that defendant lacks standing to raise the constitutionality issue. A defendant has standing to challenge the statute's constitutionality if he has sustained or is in immediate danger of sustaining some direct injury as a result of the statute's enforcement. (*People v. Esposito* (1988), 121 Ill. 2d 491, 512-13.) A person

subject to criminal prosecution has clearly established the injury needed to oppose the prosecution by asserting any relevant constitutional right. (L. Tribe, American Constitutional Law 115 (2d ed. 1988).) Since defendant was convicted of second degree murder, he has standing to raise the statute's constitutionality.

Defendant's first argument is that the second degree murder statute violates due process rights because it relieves the State of proving every element of first degree and second degree murder beyond a reasonable doubt. Instead, defendant contends, the second degree murder statute requires that he negate the elements of first degree murder and prove the mitigating factor of second degree murder by a preponderance of the evidence. Defendant concentrates on the element of unlawfulness, stating that the elements of the first degree murder statute are the same as the former murder statute, which were the knowing, intentional, and unlawful taking of another's life. *People v. Walden* (1976), 43 Ill. App. 3d 744, 752; *People v. Bauman* (1975), 34 Ill. App. 3d 582, 588.

■ Defendant, however, misreads the statute. The second degree murder statute does not require defendant to negate any of the elements of first degree murder. The first degree murder statute defines killing without lawful justification as a killing where the defendant performs the acts with intent and causation. The State must prove beyond a reasonable doubt that the killing was without legal justification by proving that the defendant had the intent to kill or cause great bodily harm and his acts caused the death. Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2).

Furthermore, if there is evidence of self-defense, the State must negate self-defense beyond a reasonable doubt. The second degree murder statute requires that the State meet its burden of proving first degree murder before the mitigating factors of second degree murder are considered. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).) Contrary to defendant's assertion, the second degree murder statute does not shift the burden of proving self-defense from the State to defendant. Defendant is confusing self-defense with the second degree murder's mitigating factor.

Defendant misplaces his reliance on *People v. Reddick* (1988), 123 Ill. 2d 184, because that case was decided under the former voluntary manslaughter statute. Unlike the former voluntary manslaughter statute, where the mitigating factor had to be disproved beyond a reasonable doubt by the State, the present second degree murder statute places the burden on the defendant to prove an unreasonable belief in the right to use self-defense by a preponderance

of the evidence. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).) The United States Supreme Court has ruled that such burden-shifting is not unconstitutional. *Patterson v. New York* (1977), 432 U.S. 197, 216, 53 L. Ed. 2d 281, 295, 97 S. Ct. 2319, 2330.

Defendant misinterprets *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, by claiming that the homicide statute in *Mullaney* was substantially identical to the Illinois second degree murder statute. The statute in *Mullaney*, however, required the defendant to disprove an element of homicide before the murder charge would be reduced to manslaughter. The jury was instructed that malice aforethought, which was an essential and indispensable element of the crime of murder, could be implied unless the defendant proved that he acted in the heat of passion on sudden provocation. The presumption of malice aforethought unconstitutionally shifted the burden to the defendant to negate that element. *Mullaney*, 421 U.S. at 704, 44 L. Ed. 2d at 522, 95 S. Ct. at 1892.

The Illinois second degree murder statute does not require the defendant to disprove any element of first degree murder. Instead, once the State has proven first degree murder beyond a reasonable doubt, the defendant must prove by a preponderance of the evidence that a mitigating factor existed before first degree murder will be reduced to second degree murder. The statute in *Patterson*, which was substantially the same as the Illinois second degree murder statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—2), required the prosecution to prove beyond a reasonable doubt that there was an intent to cause the death of another person and the death of that person or of a third person was caused by the defendant's acts. (432 U.S. at 205, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324.) No further facts were presumed or inferred in order to constitute the offense. (*Patterson*, 432 U.S. at 205-06, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324.) The court in *Patterson* held that it was constitutional to require the defendant to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance, which was a mitigating factor to reduce murder to manslaughter. *Patterson*, 432 U.S. at 206, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324-25.

Due process does not require the State to disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. (*Patterson*, 432 U.S. at 210, 53 L. Ed. 2d at 292, 97 S. Ct. at 2327.) Instead, it requires the prosecution to prove beyond a reasonable doubt all elements in-

cluded in the definition of the offense with which the defendant is charged. (*Patterson*, 432 U.S. at 210, 53 L. Ed. 2d at 292, 97 S. Ct. at 2327.) The Illinois second degree murder statute provides that a person commits the offense of second degree murder when he commits the offense of first degree murder and present is the mitigating factor that, "[a]t the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of the Code, but his belief is unreasonable." Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(1).

The statute requires the State to prove beyond a reasonable doubt all the elements of first degree murder; that is, that the defendant intended the killing, by proving either that he intended to kill or do great bodily harm to the person killed or another person, or that he knew that his acts would cause death to the person killed, or that he knew that his acts created a strong probability of death or great bodily harm to the person killed or to another person. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) If evidence of self-defense is raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not have a reasonable belief in the necessity of using deadly force. Ill. Rev. Stat. 1987, ch. 38, par. 7—1.

If the State meets its burden, the defendant is guilty of first degree murder. To reduce first degree murder to second degree murder, the defendant must then prove by a preponderance of the evidence that he believed that the circumstances justified using self-defense, but that his belief was unreasonable. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—2(a)(2), (c).) The defendant does not have to prove by a preponderance that he had a reasonable belief in self-defense. The mitigating factors present in the second degree murder statute are not elements of the offense of first degree murder. They lessen the culpability and severity of the punishment for murder. Therefore, it is constitutional to require the defendant to prove them by a preponderance of the evidence in order to reduce the first degree murder charge to second degree murder.

Defendant then asserts that the second degree murder statute violates due process and equal protection by deterring those convicted of second degree murder from appealing their convictions because on remand, the trial court might convict the defendant of first degree murder. Contrary to the State's argument, defendant did not waive the issue because it was not raised in the trial court.

A constitutional challenge to a statute can be raised at any time. *People v. Bryant* (1989), 128 Ill. 2d 448, 454.

■ Even so, defendant's argument fails. There is an implied acquittal of an offense where there is a guilty verdict on a lesser offense and silence as to the charged offense. (*Green v. United States* (1957), 355 U.S. 184, 190-91, 2 L. Ed. 2d 199, 205-06, 78 S. Ct. 221, 225-26; Ill. Rev. Stat. 1987, ch. 38, par. 3—4(a).) In order to be classified as a lesser included offense, all the elements must be included within the greater offense or there must be a less culpable mental state. (*People v. Smith* (1980), 78 Ill. 2d 298, 306; Ill. Rev. Stat. 1987, ch. 38, par. 2—9.) Because the elements of first and second degree murder are the same, and second degree murder requires a less culpable mental state (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2), 9—2(b)), second degree murder is a lesser included offense of first degree murder. A conviction for second degree murder is, therefore, an acquittal of first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 3—4(a).) If a defendant appeals his second degree murder conviction and it is overturned and remanded for a new trial, double jeopardy bars being retried for first degree murder. Consequently, the statute does not deter appeals and is not unconstitutional.

■ Defendant then argues that he proved by a preponderance of the evidence that he was acting in self-defense when he shot Lloyd Williams. Defendant uses the incorrect standard. To establish self-defense, defendant must show some evidence that unlawful force was threatened against him; the danger of harm was imminent; he was not the aggressor; that he actually believed that a danger existed, force was necessary to avert the danger, and the type and amount of force was necessary; and that his beliefs were reasonable. (*People v. Alcazar* (1988), 173 Ill. App. 3d 344, 349; *People v. Seiber* (1979), 76 Ill. App. 3d 9, 13.) Once shown, the burden of proof shifts to the State to prove beyond a reasonable doubt that defendant did not act in self-defense. (*People v. White* (1980), 90 Ill. App. 3d 1067, 1070; Ill. Rev. Stat. 1987, ch. 38, pars. 3—2, 7—1.) The State has carried its burden if it has negated any one of the elements beyond a reasonable doubt. *Seiber*, 76 Ill. App. 3d at 13.

Defendant argues that Williams was taller and 37 pounds heavier, and Richard Green was unable to keep Williams back. Additionally, defendant states that he was permanently disabled in a 1982 motorcycle accident. Defendant then concludes that Williams

was capable of doing serious bodily harm or killing defendant without the use of a deadly weapon, and had the intent to do so.

Defendant relies on *People v. Estes* (1984), 127 Ill. App. 3d 642, 649, where the victim had previously inflicted serious bodily harm without being armed. The victim, who was married to the defendant, was a 6-foot-tall, 200-pound crane operator, who had previously broken the defendant's tailbone by knocking her down. (*Estes*, 127 Ill. App. 3d at 649.) Furthermore, the defendant did not know whether the victim had a concealed weapon. In fact, a loaded gun was found in the car from which the victim exited. *Estes*, 127 Ill. App. 3d at 652.

The court in *Estes* stated that a defendant needs only the subjective belief that he was in danger of suffering great bodily harm or death to justify using deadly force. (127 Ill. App. 3d at 651.) That subjective belief exists if "the facts and circumstances would induce a reasonable apprehension of serious bodily harm in light of the defendant's perception of the situation at the time he employed force against his aggressor." *Estes*, 127 Ill. App. 3d at 651.

While it is true, as defendant contends, that the law does not require the aggressor be armed before the use of a deadly weapon in self-defense is justified, it must appear that the aggressor is capable of inflicting serious bodily harm without the use of a deadly weapon, and is intending to do so. (*Estes*, 127 Ill. App. 3d at 651.) There was no evidence, however, that Williams was either capable of causing serious bodily harm to defendant without using a weapon or had the intent to kill defendant. Williams and defendant had fought before and neither suffered serious bodily harm.

The trial court found that the State proved beyond a reasonable doubt that defendant did not have a reasonable belief that deadly force was justified. The trial court indicated that Williams was unarmed and his hands were visible at all times. This finding would result in a conviction for first degree murder. Then, the trial court ruled that defendant proved by a preponderance of the evidence that he had an actual, but unreasonable, belief in his right to use self-defense, thus reducing first degree murder to second degree murder.

The determination regarding whether a killing was justified under self-defense principles depends on the surrounding facts and circumstances and is a question of fact for the trial judge. (*Alcazar*, 173 Ill. App. 3d at 349.) The trial court decision will not be disturbed unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Price* (1987), 158 Ill.

App. 3d 921, 926.) The trial court did not err in its finding that the State negated self-defense beyond a reasonable doubt. Therefore, the second degree murder conviction was proper.

■ Defendant next asserts that he was improperly convicted of two counts of second degree murder for only one crime. The State agrees. There can be only one murder conviction and one sentence for one count of murder where there was only one death. (*People v. Hood* (1989), 191 Ill. App. 3d 129, 134.) Therefore, the conviction on one count of second degree murder must be vacated.

Finally, defendant contends that the trial court abused its discretion in sentencing him to 10 years' imprisonment. The defendant argues that the sentence does not take into consideration the mitigating factors of his general moral character, his lack of any criminal history, his age, his natural inclination or aversion to commit crime, and the stimuli which motivated his conduct. (*People v. Morgan* (1974), 59 Ill. 2d 276, 282.) Defendant emphasizes his lack of criminal history, his support for his family, the case's facts, and sentences given in similar cases. Moreover, he asserts that the sentence does not serve the purpose of restoring the defendant to useful citizenship.

■ We reject defendant's argument that his sentence is excessive when compared to sentences for similar crimes. The trial court has discretion to impose a suitable sentence. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501.) The trial judge is in a better position to determine the proper sentence, which depends on many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Cox* (1980), 82 Ill. 2d 268, 279.) The court can also consider the force employed and the physical manner in which the victim's death occurred, but not the death itself. *People v. Smith* (1990), 195 Ill. App. 3d 878, 885.

Defendant was convicted of second degree murder, a Class 1 felony (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(d)), which carries a sentence of 4 to 15 years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(4).) The trial court can also order a sentence of probation, unless imprisonment is necessary to protect the public or probation would deprecate the seriousness of the defendant's conduct and would be inconsistent with the ends of justice. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—1(a).) Probation is not an inherent or statutory right, but rather a discretionary matter for the court. (*People v. Sprouse* (1981), 94 Ill. App. 3d 665, 677.) Although the trial court is required to consider rehabilitation as an objective

of the sentence (*Alcazar*, 173 Ill. App. 3d at 356), it is not required to give greater weight to the defendant's potential for rehabilitation than to the seriousness of the crime. *People v. Shumate* (1981), 94 Ill. App. 3d 478, 485.

The trial court considered probation, stating that such a sentence would deprecate the seriousness of defendant's act and would be inconsistent with the ends of justice. The trial court also took into consideration defendant's lack of any criminal history and his caretaking functions for his family. Furthermore, there is no evidence that the trial court considered the victim's death as an aggravating factor. Therefore, in light of the court's clear statement that it considered all relevant factors, the trial court did not abuse its discretion in sentencing defendant to 10 years' imprisonment.

Based on the foregoing, the judgment of the circuit court for one count of second degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)) is affirmed. The second count of second degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)) is vacated. The sentence of 10 years' imprisonment is affirmed.

Affirmed in part; vacated in part.

RIZZI and TULLY,* JJ., concur.