THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DER-RICK BOOKER, Defendant-Appellant.

First District (2nd Division)    No. 1—93—1315

Opinion filed July 25, 1995.

James E. Chadd, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore Fotios Burtzos, and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a jury trial, defendant Derrick Booker was convicted of first degree murder and sentenced to 30 years' imprisonment. Defendant did not deny killing the deceased. He claimed he did so in self-defense, a theory heavily dependent on establishing that he feared the deceased. Because he was denied adequate opportunity at trial to present evidence to show his state of mind concerning his fear of the deceased, we reverse his conviction and remand for a new trial.

Defendant was charged by indictment with two counts of first degree murder in the shooting death of Jimmy Hardin (Jimmy). At trial, the State presented three of Jimmy's cousins as occurrence witnesses: Tyrone Horton (Tyrone), Lee Hardin (Lee), and Jerome Hardin (Jerome).

Their testimony was that on June 14, 1992, several people, including each of them and Jimmy, were gathered on the front porch of 6028 South Cottage Grove in Chicago. At about 1 a.m., defendant and his cousin, Deon Reed (Deon), walked past the group. Jimmy left the porch, approached defendant and Deon, spoke with defendant for a minute, and then attempted to hit him. When the punch missed defendant, Deon hit Jimmy in the jaw. According to Jerome, Jimmy received the punch, ducked back, and lost the hat from his head. Lee witnessed Jimmy jump back with his fists raised. All three witnesses testified that they did not see a weapon in Jimmy's hands. Tyrone and Jerome testified that after Deon struck Jimmy defendant took out a gun and fired four shots at Jimmy. Lee did not see the shooting, but he testified to hearing four shots. The three testified that defendant then fled the scene saying something about "that mark" taking a swing at him.

Jimmy received one gunshot wound to the front right thigh and another to the lower left back area. Deputy Medical Examiner Dr. Thamrong Chira performed the autopsy and testified that Jimmy died of multiple gunshot wounds.

Defendant testified that in early May 1992, he was riding in a car with a friend named Wally. Jimmy approached the car and requested a ride so that he could pick up a pistol. Wally refused to take him, and Jimmy got angry and threw a 40-ounce bottle at the windshield, cracking it. Jimmy then cussed and banged on the car. During the incident, defendant did not observe any weapon on Jimmy. On May 20, 1992, defendant was walking down an alley near 61st and Cottage Grove with his cousin and a friend when someone stepped from around the corner and fired a shotgun. Defendant was struck in the face and hand with buckshot from the shotgun. Kevin and Ernest Porter were subsequently arrested for the shooting, and defendant intended to testify against them in court. Defendant also testified

that Kevin and Ernest Porter were friends of Jimmy, and that "like from my knowledge, people was trying to keep me from going to court." Defendant began carrying a pistol because he was afraid someone was going to do something to him.

After midnight on June 14, 1992, defendant was walking with Deon toward a gas station on Cottage Grove when Jimmy and Tyrone approached him. Jimmy asked defendant if he intended to testify against his friends. Defendant responded "yes," and Jimmy attempted to punch him. Defendant backed away from the swing, and Jimmy "walked up" on him, reaching his right hand into his waistband. Deon then struck Jimmy and the two engaged in a scuffle. Jimmy knocked Deon down, turned towards defendant, and again reached "towards his belt buckle towards his waist." When Jimmy went into his waistband, defendant thought he was "going to try to pull out a gun or something." Defendant shot at Jimmy's leg. Jimmy turned around with his hand still in his waist, and defendant fired another shot. Defendant did not aim his gun at Jimmy's head or chest because he just wanted to keep Jimmy away so that he could flee. Defendant denied that he stated anything about "that mark" taking a swing at him.

■ At trial, defendant attempted to establish that he acted in self-defense when he shot Jimmy. The use of deadly force in self-defense is justified when the defendant is not the aggressor and the defendant reasonably believes that he is threatened with force which will cause death or great bodily harm and the danger of harm is imminent. The use and amount of force exercised must be necessary to avert the danger. (*People v. Jordan* (1985), 130 Ill. App. 3d 810, 812, 474 N.E.2d 1283.) The reasonableness of an individual's belief that the use of deadly force was necessary is a question of fact. *Jordan*, 130 Ill. App. 3d at 812.

■ Evidence about a victim's aggressive and violent character may be offered to support a theory of self-defense and to show that a defendant's knowledge of the victim's behavior and tendencies affected his perceptions of and reactions to the victim's actions. (*People v. Lynch* (1984), 104 Ill. 2d 194, 199-200, 470 N.E.2d 1018.) To be admissible, evidence must be relevant. Proffered evidence which has little probative value due to remoteness, uncertainty, or its potential prejudicial nature may be rejected as irrelevant. (*People v. Ward* (1984), 101 Ill. 2d 443, 455, 463 N.E.2d 696.) The admission of evidence is within the sound discretion of the circuit court, and its ruling should be upheld absent a clear showing of abuse of discretion. *Ward*, 101 Ill. 2d at 455-56.

In this appeal, defendant contends that he was denied his right

to a fair trial because the circuit court refused to allow him to present evidence that: (1) he had learned through a friend that Jimmy was threatening him with bodily harm, (2) he knew that Jimmy had been tried for murder, and (3) he knew that Jimmy had a reputation for violence.

## A

■ Defendant contends that the circuit court erroneously prohibited him from testifying that his friend, Tamika Jackson, told him that she had overheard Jimmy say that if defendant testified against Kevin and Ernest Porter "he is going to be dealt with." When defendant sought to offer evidence of what he had learned from Jackson, the State objected on the basis of hearsay. Stating that, "under those circumstances, a defendant could testify that I received a hundred threats," the circuit court excluded the testimony. The State now contends that the testimony was inadmissible because the means by which the alleged threat was issued and brought to defendant's attention were unreliable, and thus the evidence was of slight probative value. The State's focus, however, is misplaced because the only relevant issues are what defendant was told and how that affected his state of mind. The prosecution could have explored and tested the circumstances under which defendant learned of the threat through cross-examination of defendant. Defendant's knowledge of a threat of bodily harm from the deceased is probative of the question of whether he reasonably believed that he was at imminent risk of danger at the time of the shooting. The exclusion of defendant's testimony was erroneous.

## B

■ Defendant argues that the circuit court also erred in prohibiting him from testifying that he was aware that Jimmy had been charged with murder. The State argues that the testimony was not probative because, although Jimmy had been charged with murder, he had been acquitted and such evidence would have been prejudicial to the prosecution. However, the relevant considerations are: what information did defendant possess concerning the murder charges against Jimmy and how did that information affect his state of mind before and at the time of the shooting? Awareness of a past murder charge—even one that had resulted in acquittal—was relevant to defendant's belief that his life was in danger. Defendant's knowledge of that information was relevant to his state of mind; he should have been allowed to present his knowledge and its effect on him for the jury's consideration. Whether defendant knew of the acquittal and

the effect such knowledge may have had on him were proper areas for cross-examination by the State.

## C

■ Defendant also contends that the circuit court erroneously prohibited him from testifying about his knowledge of Jimmy's reputation for violence.

This issue arose during opening statement, when defense counsel said that Jimmy "had a background and a reputation in the community for robberies." The State's objection to that statement was sustained and a lengthy sidebar discussion ensued. During the discussion, defense counsel announced his intention to introduce evidence concerning Jimmy's reputation in the community for violence. The State's specific objection was that defendant had to testify to matters that he had personally seen and that information told to him was inadmissible.

Although it prevented counsel from discussing reputation evidence during opening statements, the court's ultimate sidebar ruling was not to exclude defendant's reputation testimony, but rather to postpone ruling on the matter until defendant offered a basis for his knowledge of Jimmy's character, something that was vague during the sidebar discussion. The record shows, however, that defendant never offered reputation testimony during trial. Because the exclusion of the other evidence provides adequate grounds for reversal and remand, we point out merely that on remand, if a proper foundation is presented, defendant should be allowed to testify as to his knowledge of Jimmy's reputation for violence.

## D

Conceding that the claims of error were properly preserved in this case, the State contends alternatively that any error was harmless because the jury would not have reached a different result even if the state-of-mind evidence had been admitted. (*People v. Crum* (1989), 183 Ill. App. 3d 473, 485, 539 N.E.2d 196, *appeal denied* (1989), 127 Ill. 2d 624, 545 N.E.2d 118.) It argues that, despite the court's rulings, defendant was able to communicate to the jury that he was shot by Kevin and Ernest Porter, he intended to testify against them in court, Jimmy had taken a swing at him after he told Jimmy that he planned to testify against the Porters, and he was carrying a gun at the time of the shooting "because he was afraid someone was going to do something to [him]" because "people was trying to keep [him] from going to court."

■ It is true that defendant was able to provide some evidence of

his state of mind. It is also true that if the admitted evidence was an adequate substitute for the excluded evidence or if such evidence adequately compensated for the excluded evidence, any error should be deemed harmless. See, *e.g., People v. Parker* (1990), 194 Ill. App. 3d 1048, 1058-59, 551 N.E.2d 1012 (improperly excluded evidence concerning defendant's state of mind merely cumulative where defendant gave both direct and circumstantial evidence on the issue); *People v. Sims* (1994), 265 Ill. App. 3d 352, 638 N.E.2d 223 (considering entire record, excluded state-of-mind evidence that victim carried and pulled gun the day before shooting was harmless).

The court's rulings here, however, precluded defendant from testifying that he feared Jimmy specifically because Jimmy had threatened to harm him and because he knew that Jimmy had been charged with murdering another person. Considering the totality of evidence in this case, we conclude that defendant's testimony that "people" were trying to prevent him from testifying was not an adequate substitute for the specific and pointed testimony concerning the bases for his fear of Jimmy. Given the evidence in this case, especially that concerning the events that immediately preceded the shooting, defendant's fear of Jimmy in particular, not of "people" in general, was meaningful to his claim of self-defense.

The State also argues that the exclusion of defendant's testimony about Jimmy's murder charge was harmless because the jury heard defense counsel say in opening statement that evidence would show that Jimmy had been charged with murder. However, the court immediately admonished the jury to disregard defense counsel's statement, and defendant was not permitted to supplement the opening statement with testimony about his knowledge of the charge and about how this information affected his perception of Jimmy and his state of mind on the night of the shooting.

From this record, we cannot say that the jury would not have reached a different verdict if it had been aware of defendant's knowledge of the threat from Jimmy and of Jimmy's murder charge. We therefore conclude that the circuit court erroneously denied admissibility of that evidence, the error was not harmless, and a new trial is warranted.

Reversed and remanded.

HARTMAN and McCORMICK, JJ., concur.