FOURTH DIVISION

MAY 14, 1998

No. 1--96--4058

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

RONALD HAWKINS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 95--CR--25316

Honorable

John D. Brady,

Judge Presiding.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Ronald Hawkins, was convicted of the first-degree murder (720 ILCS 9--1(a)(1)(West 1994)) of Ernest Green and sentenced to 20 years' imprisonment.  On appeal, defendant asserts that (1) he was denied the right to present a defense; and (2) he was not proven guilty beyond a reasonable doubt.  For the following reasons, we reduce the conviction to second-degree murder and remand for resentencing.

On August 15, 1995, defendant stabbed and killed the victim, Ernest Green.  Defendant does not deny killing Green, but contends that he did so in self-defense.  

At trial, Sheila Davis testified that she lived on the second floor of 5449 South Morgan Street in Chicago.  Lornett Bea lived on the first floor on the 5449 side of the building and defendant lived on the 5447 side.  At 1:30 p.m. on August 15, 1995, Davis was returning home when she went up the back stairs of her building.  Defendant, Green, and Bea were sitting on Bea's back porch.  A half-hour later, Davis went onto her back porch.  Shortly after sitting down, she heard two bams coming from Bea's porch.  When she yelled, "[W]hat's going on down there," no one responded.  

After the second bam, Davis heard a woman screaming from a nearby porch.  Davis ran downstairs, looked over the railing, and saw Green running down the back stairs toward the alley.  There was blood on Green's neck.  When Davis asked defendant, who was standing at the bottom of the first floor stairs, what had happened, he did not respond.  Davis called Green's mother, then went through the alley to Green's house.  Davis saw Green, covered with blood, lying on the ground in his backyard.  After the police arrived, Davis heard defendant tell the police, "I did it."  She did not see defendant bleeding, but she did see blood on his hands and shirt.  

Davis further testified that she saw defendant and Green together four times during that summer, including a week before the stabbing.  Once, Davis saw Green fighting with defendant, but she did not hear Green make any threats against defendant.

Lornett Bea, who was a friend of both defendant and Green, testified that he never saw defendant and Green fighting although they teased and argued with each other.  On the afternoon of August 15, 1995, Bea, defendant, and Green were sitting on Bea's back porch.  They were drinking and smoking marijuana laced with cocaine.  At 2 p.m., Bea went inside his apartment to use the bathroom and to get something to eat.  While he was in his kitchen, he heard the glass in his back door breaking.  When he went out to the porch, he saw a brick on the porch near the glass.  He also saw Green running towards his home and defendant on the 5447 side of the building.  

The parties stipulated that Dr. Larry Simms, Cook County Deputy Medical Examiner, would testify that he performed the autopsy on Green, who died of multiple stab and incised wounds.  The toxicology report indicated that there was .35 ml. of benzoyledgonine, .51 ml. of ethanol, and .16 ml. of cocaine in Green's body at the time of his death. 

Chicago police officer Michael Kolasa investigated the stabbing.  While he was on Bea's back porch, defendant came onto a nearby porch and yelled, "I did it.  I cut him.  I stabbed him."  Defendant was handcuffed, advised of his 
Miranda
 rights, and transported to the police station by Chicago police officer William Svillar.  At the time, defendant's clothes were covered with blood.  Later, when Officer Kolasa saw defendant at the police station after other officers had taken defendant's clothes, he did not notice any injuries on defendant.  

Officer Svillar testified that defendant initiated a conversation with him on the way to the police station by asking if Green was dead.  When Officer Svillar told him that Green had died, defendant responded, "I meant that to happen" and "I love that."  Defendant further stated that he had had some problems with Green in the past and that he was no mass murderer, but he "just had to take care of business."

Defendant testified that he had known Green for one and one-half years before the stabbing and had been in his company 20 times.  At 1:15 p.m. on August 15, 1995, defendant and Bea were sitting on Bea's back porch when Green arrived.  The three men drank and talked until Bea went into his apartment.  A couple of seconds later, Green asked defendant for $2.  Defendant responded by telling Green that he had a lot of nerve asking for money after Green had earlier pulled a knife on him.  Defendant explained that Green had approached him three days earlier when defendant was sitting on his own back porch.  After Green pulled the knife on him, defendant went into his house and locked the door.

On the day of the stabbing, defendant told Green that he would not give him the $2, so Green reached into defendant's pockets, then punched defendant on the left side of his head, causing defendant to fall to the floor.  After defendant fell, Green threw a brick at defendant just missing defendant's head and hitting the glass in Bea's back door.  Green then came up the stairs toward defendant and said, "I'm goin' kill you, nigger."  

At that point, defendant pulled out his knife, but Green kept coming toward defendant, who tried to run down the stairs.  Green blocked his way, grabbed him and swung at him with a closed fist.  Defendant testified that he did not know if Green had anything in his hand, but defendant was terrified and scared.  As a result, he defended himself by swinging the knife at Green.  Defendant remembered stabbing Green only once.

After the stabbing, defendant was in shock, but he went home and washed the blood off before waiting for the police on his back porch.  After he was arrested, defendant told the paramedics that he felt fine.  A picture of defendant taken shortly after the stabbing showed no injuries on defendant's body.

According to defendant, he told the police that he had had an altercation with Green, who threatened to kill him and that he was defending himself.  Defendant further stated that he never intended to kill Green.

Defendant testified about his past problems with Green.  Not only had defendant and Green had an argument a week before the stabbing, but Green had pulled a knife on defendant on several previous occasions.  The victim had also hit defendant with a brick on a previous occasion.

In the State's rebuttal, by way of stipulation, Chicago police detective Edward Winstead testified that he spoke with defendant the day he was arrested.  After being advised of his 
Miranda
 rights, defendant told Detective Winstead that he was so upset by what happened that he picked up a brick and broke Bea's window. 

Defendant asserts on appeal that he was denied the right to present a defense because the trial court excluded his state-of-mind evidence as well as evidence of the victim's prior violent and bad acts.  

When the theory of self-defense is raised, evidence of the victim's aggressive and violent character is relevant (1) to show that a defendant's knowledge of the victim's behavior and tendencies affected his perceptions of and reactions to the victim's actions, and (2) to support the defendant's version of the facts where there are conflicting accounts of what happened, regardless of when the defendant learned of the victim's violent tendencies.  
People v. Lynch
, 104 Ill. 2d 194, 199-201, 470 N.E.2d 1018 (1984); 
People v. Booker
 274 Ill. App. 3d 168, 171, 653 N.E.2d 952 (1995).  However, it is within the trial court's discretion to determine whether evidence is rele­vant and admissible and its decision will not be overturned absent a clear abuse of discre­tion resulting in manifest preju­dice to defendant.  
People v. Hayes
, 139 Ill. 2d 89, 130, 564 N.E.2d 803
 (1990); 
People v. Ward
, 101 Ill. 2d 443, 455-56, 463 N.E.2d 696 (1984).  

Whether the victim was a violent person was an important and relevant part of the defense, which was that defendant acted reasonably in defending himself against the victim.  
Booker
 274 Ill. App. 3d at 172.  Also important in self-defense is the defendant's state of mind.  Where the intention, motive or belief of the accused is material to the issue, he is allowed to testify directly to that fact, and to have the circumstances surrounding the act consid­ered in connection with his testimony.  
People v. Quick
, 236 Ill. App. 3d 446, 453, 603 N.E.2d 53 (1992); 
People v. Perez
, 209 Ill. App. 3d 457, 466
, 568 N.E.2d 250 (1991).  What defendant was told and how that affected his state of mind are relevant issues.  
Booker
 274 Ill. App. 3d at 172.  Moreover, defendant's knowledge of the victim's propensity for violence is probative of the question of whether defendant reasonably believed that he was at imminent risk of danger at the time of the stabbing.  

We find that the trial court made several errors when it did not allow more complete evidence of Green's past violent acts against defendant and defendant's state of mind at the time of the stabbing, but the exclusion of evidence was not prejudicial because defendant was able to present the same or substantially the same evidence during the trial to try to show that the victim was more likely the aggressor and that defendant was scared of him.  Therefore, the errors were harmless beyond a reasonable doubt. 

The trier of fact in this case heard evidence that Green had pulled a knife on defendant three days before the stabbing, that Green had fought with defendant earlier that summer, that Green had previously struck him with a brick, that Green threw a brick at defendant's head, that Green and defendant were smoking marijuana laced with cocaine just prior to the stabbing, that alcohol and cocaine were found in Green's blood, that Green told defendant, "I'm goin' kill you, nigger," and that defendant was scared and terrified of Green at the time of the stabbing.  Therefore, defendant was not prejudiced by the trial court's errors in not allowing more complete testimony about Green's propensity toward violence and defendant's state of mind at the time of the stabbing.

Finally, defendant argues that there was insufficient evidence to prove that he did not have a reasonable belief that he needed to act in self-defense, or in the alternative, that his conviction should be reduced to second-degree murder.  

For a second-degree murder conviction, the State must prove beyond a reasonable doubt all the elements of first degree murder; that is, that the defendant intended the killing by proving either that he intended to kill or do great bodily harm to the person killed or another person, or that he knew that his acts would cause death to the person killed, or that he knew that his acts created a strong probability of death or great bodily harm to the person killed or to another person.  720 ILCS 5/9-1(a)(1), 9-1(a)(2))(West 1994).  Once the State has proven first degree murder beyond a reasonable doubt, the defendant must prove by a prepon­derance of the evidence either that he was acting under a sudden and intense passion resulting from serious provocation by the victim or that he believed that the circumstances justified using self-defense, but that his belief was unreasonable.  
People v. Shumpert
, 126 Ill. 2d 344, 352, 533 N.E.2d 1106 (1989); 
People v. Brown
, 218 Ill. App. 3d 890, 895, 578 N.E.2d 1168 (1991); 720 ILCS 5/9-2(c)(West 1994).  The mitigating factors present in the second degree murder statute are not elements of the offense.  Instead, they lessen the culpa­bility and severity of the punishment for murder.  
Brown
, 218 Ill. App. 3d at 897.  

If evidence of self-defense is raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not have a reasonable belief in the necessity of using deadly force.  720 ILCS 5/7-1 (West 1992); 
Brown
, 218 Ill. App. 3d at 897.  The reasonableness of an individual's belief that the use of deadly force was necessary depends on the surrounding facts and circumstances and is a question of fact.
 
 
People v. Felella
, 131 Ill. 2d 525, 534, 546 N.E.2d 492 (1989); 
Booker
 274 Ill. App. 3d at 171.  The use of deadly force in self-defense is justified when the defendant is not the aggressor and the defendant reasonably believes that he is threatened with force that will cause death or great bodily harm and the danger of harm is imminent.  
Booker
 274 Ill. App. 3d at 171.  The use and amount of force exercised must be necessary to avert the danger.  
Booker
 274 Ill. App. 3d at 171.  

To establish self-defense, the defendant must show some evidence that unlawful force was threatened against him; the danger of harm was imminent; he was not the aggressor; that he actually believed that a danger existed, force was necessary to avert the danger, and the type and amount of force was necessary; and that his beliefs were reason­able.  
Brown
, 218 Ill. App. 3d at 898
; 
People v. Alcazar
, 173 Ill. App. 3d 344, 349, 527 N.E.2d 325 (1988).  While the law does not require the aggressor to be armed for self-defense to be justified, it must appear that the aggressor is capable of inflicting serious bodily harm without the use of a deadly weapon, and is intending to do so.  
Brown
, 218 Ill. App. 3d at 898; 
People v. Estes
, 127 Ill. App. 3d 642, 469 N.E.2d 275
 (1984).

Once the defendant has met his burden, the burden of proof shifts to the State to prove beyond a reasonable doubt that the defendant did not act in self-defense.  
Brown
, 218 Ill. App. 3d at 898; 
People v. White
, 90 Ill. App. 3d 1067, 1070, 414 N.E.2d 196 (1980); 720 ILCS 5/7-1 (West 1992).  The State carries its burden if it negates any one of the elements beyond a reasonable doubt.  
Brown
, 218 Ill. App. 3d at 898.

When the sufficiency of the evidence is challenged, a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  
People v. Gilliam
, 172 Ill. 2d 484, 515, 670 N.E.2d 606 (1996); 
People v. McDonald
, 168 Ill. 2d 420, 443, 660 N.E.2d 832 (1995).  The reviewing court may not retry the defendant.  
People v. Rivera
, 166 Ill. 2d 279, 287, 652 N.E.2d 307 (1995).  Instead, the trier of fact has the responsibility to determine the credibility of the witnesses, the weight given their testimony, and the reasonable inferences to be drawn from the evidence.  
People v. Enis
, 163 Ill. 2d 367, 393, 645 N.E.2d 856
 (1994); 
People v. Mullen
, 141 Ill. 2d 394, 403, 566 N.E.2d 222 (1990).
  The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); 
Gilliam
, 172 Ill. 2d at 515. 

After carefully considering all the evidence in the light most favorable to the prosecution, we find that defendant had an actual, but unreasonable belief that he had the right to use self-defense against Green.  There was evidence that Green had pulled a knife on defendant three days before the stabbing, that Green had fought with defendant earlier that summer, that Green had previously struck him with a brick, that Green and defendant were smoking marijuana laced with cocaine just prior to the stabbing, and that alcohol and cocaine were found in Green's blood.  Defendant presented the only testimony about the events on the porch just prior to the stabbing.  After defendant refused to lend Green $2, Green reached into defendant's pockets, then punched defendant on the left side of his head, causing defendant to fall to the floor.  After defendant fell, Green threw a brick at defendant just missing defendant's head and hitting the glass in Bea's back door.  Green then came up the stairs toward defendant and said, "I'm goin' kill you, nigger."  At that point, defendant pulled out his knife, but Green kept coming toward defendant, who tried to run down the stairs.  Green blocked his way, grabbed him, and swung at him with a closed fist.  Defendant testified that he did not know if Green had anything in his hand, but defendant was terrified and scared.  

Considering the evidence in the light most favorable to the prosecution, we find that the State proved defendant guilty of first-degree murder beyond a reasonable doubt.  When the victim grabbed the defendant and swung at him with a closed fist, there was no visible evidence of a weapon.  Thus, deadly force was not threatened at that time.  Also the victim and defendant had fought before and there was no evidence defendant had ever suffered any bodily harm.  Therefore, defendant's belief of the need to use a deadly weapon in his defense was unreasonable.   However, we find that defendant proved by a prepon­derance of the evidence that he believed that the circumstances justified using self-defense, but that his belief was unreasonable.  
Therefore, the evidence supports a conviction for second-degree murder, not first-degree murder.  
People v. Collins
, 213 Ill. App. 3d 818, 572 N.E.2d 1005 (1991).

Based on the foregoing, we affirm defendant's murder conviction as reduced to second-degree murder and remand for resentencing.

Affirmed as modified and remanded.

Wolfson, J., and South, J., concur.