NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230264-U

NO. 4-23-0264

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 17, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| QUINTON A. SMITH, | ) | No. 19CF1530 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because no evidence had been adduced to support some of the essential elements of second degree murder, the circuit court did not abuse its discretion by refusing a jury instruction on that offense.

¶ 2    In the circuit court of Winnebago County, a jury found defendant, Quinton A. Smith, guilty of three offenses: (1) first degree murder of Joseph Hernandez by defendant's personal discharge of a firearm (see 720 ILCS 5/9-1(a)(2) (West 2018); 730 ILCS 5/5-8-l(d)(iii) (West 2018)), (2) aggravated discharge of a firearm in the direction of an occupied motor vehicle (see 720 ILCS 5/24-l.2(a)(2) (West 2018)), and (3) aggravated battery of Kaitlin Shumaker with a firearm, resulting in injury to her (see *id.* § 12-3.05(e)(l)). For first degree murder, the court sentenced defendant to 55 years' imprisonment. For aggravated battery, the court sentenced him to a consecutive prison term of 15 years.

¶ 3          Defendant appeals on a single ground: he argues the circuit court abused its discretion by refusing his request to give a jury instruction on second degree murder (see *id.* § 9-2(c)). In our review of the record, however, we see no evidence supporting two of the elements of second degree murder. First, the record lacks any evidence to support a characterization of defendant as "not the aggressor" when he chased Hernandez and, upon catching up with him, shot him in the back. *People v. Mujkovic*, 2022 IL App (1st) 200717, ¶ 26. Second, we see no evidence that, at the time defendant shot Hernandez—an unarmed man running for his life—the "danger of harm" to defendant "was imminent." *Id.* Absent some minimal evidence of those two elements, we disagree that the court abused its discretion by refusing to instruct the jury on second degree murder. Therefore, we affirm the judgment.

¶ 4                              I. BACKGROUND

¶ 5          Evidence in the jury trial tended to prove the following facts.

¶ 6          At about 5:30 or 6 a.m. on June 18, 2019, in Rockford, Illinois, Hernandez telephoned Mackenzie Berry, the mother of defendant's infant child. Defendant answered her phone and before hanging up, told Hernandez to "stop calling my b*** phone." (We quote from the police interview of defendant.) Then Hernandez rang the phone of Berry's friend (name unknown), who also was present in Berry's residence. Hernandez asked where defendant was. Defendant said into the phone, which was in video-chat mode, "I'm right here." Hernandez made a finger-gun gesture in the camera and said, "I got my Blick." Defendant responded, "Well, I got mine, too. Pop up."

¶ 7          Hernandez arrived at Berry's residence. Berry's friend locked the door and called to defendant, who was upstairs. Berry tried to hold defendant back, pleading with him, "[P]lease, don't do it." Defendant responded, "No, n*** said he's going to kill me, right?" When Berry

picked up their baby son, defendant ran out of the room and down the stairs. As defendant later admitted to the police, he knew that Hernandez would not shoot him in Berry's residence when Berry and the baby were present.

¶ 8        When defendant opened the door, Hernandez told him, "I ain't got no gun." Defendant answered, "I do," whereupon defendant took his pistol out of his pants and "upped it" on Hernandez. Hernandez ran. Defendant chased him down the street and fired a shot at him. Then he chased Hernandez around DaVita Dialysis Center and shot at him again. Both of those shots missed. Katie Shumaker, whom Berry had telephoned earlier to bring cannabis, was at the scene, in the driver's seat of her car. Hernandez saw Shumaker's car and scrambled to get in. Defendant ran into the middle of the street and, with the third shot, struck Hernandez in the back as he opened the passenger-side door of Shumaker's car. The bullet passed through Hernandez and struck Shumaker in the thigh. Then defendant left the scene and threw the pistol into a river.

¶ 9        When arrested, defendant was cooperative. He admitted he had intended to kill Hernandez. He told a detective, "I'm not going to lie. He said he's going to kill me if he caught me." The detective commended defendant for his candor and said, "[Y]ou attempted to kill him because you thought he was coming to kill you." Defendant agreed.

¶ 10        Nevertheless, at trial, the circuit court declined to give a jury instruction on the lesser offense of second degree murder. In the court's view, there was no evidence to support such an instruction. The court acknowledged the threat that Hernandez made to defendant in the video chat. Even so, the court saw no evidence that defendant was in imminent danger at the time he shot Hernandez. Rather, when chasing down Hernandez and shooting him as he tried to get into Shumaker's car, defendant was, as the court put it, "totally the aggressor."

¶ 11                                II. ANALYSIS

- 3 -

¶ 12    Second degree murder is made up of the following elements, all of them indispensable: "(1) force is threatened against the person, (2) the person threatened is not the aggressor, (3) the danger of harm was imminent, (4) the threatened force was unlawful, and (5) the defendant actually and subjectively believed a danger existed that required the use of force applied." *Id.* ¶ 26.

¶ 13    In a first degree murder case, if there is very slight evidence that, if believed by the jury, would reduce the crime to second degree murder, and if the defense tenders a proper jury instruction on that lesser crime, the circuit court should give the instruction. See *People v. McDonald*, 2016 IL 118882, ¶ 25; *People v. Lockett*, 82 Ill. 2d 546, 550 (1980); *People v. Hayes*, 2022 IL App (4th) 210409, ¶ 67; *People v. Salas*, 2011 IL App (1st) 091880, ¶ 82. "When deciding whether to give a tendered instruction, the court's role is to determine whether there is some evidence supporting that theory, without weighing the evidence." (Internal quotation marks omitted.) *Hayes*, 2022 IL App (4th) 210409, ¶ 67. A jury instruction on second degree murder should not be given, though, if the evidence clearly shows that the crime was first degree murder and there is no evidence upon which a jury could find the defendant guilty of second degree murder. See *Lockett*, 82 Ill. 2d at 551. The question for us is whether the refusal of a jury instruction on second degree murder was an abuse of discretion. See *People v. Hampton*, 2021 IL App (5th) 170341, ¶ 100.

¶ 14    Defendant argues that, in the light of *People v. Goods*, 2016 IL App (1st) 140511, and *People v. Hawkins*, 296 Ill. App. 3d 830 (1998), the circuit court abused its discretion. Unlike those cases, however, the present case lacks evidence—even very slight evidence—of an imminent danger of harm to defendant at the time he shot the victim. In *Goods*, the victim fumbled at his waist, as if reaching for a pistol, before the defendant shot him. The appellate court observed that

the victim "was, in fact, armed and the danger of harm to [the] defendant was imminent." *Goods*, 2016 IL App (1st) 140511, ¶ 50. Hernandez, by contrast, was unarmed and running away from defendant when defendant shot him in the back.

¶ 15        Defendant's comparison of Hernandez to the victim in *Hawkins* is equally strained. In *Hawkins*, when the defendant stabbed the victim, the victim was coming up the stairs toward the defendant, saying, " 'I'm goin[g] [to] kill you, n***.' " *Hawkins*, 296 Ill. App. 3d at 838. In the present case, the roles are reversed. Defendant was pursuing Hernandez and (by repeatedly firing at him) was threatening to kill him. Hernandez ceased being the aggressor when, after telling defendant he had no gun, he ran away. Defendant became the aggressor when he ran after Hernandez, shooting at him.

¶ 16        We acknowledge the evidence that Hernandez threatened defendant earlier, in the video chat, by making a finger-gun gesture in the camera and saying, "I got my Blick." The trouble is that this evidence, if the jury believed it, would be insufficient to reduce the crime to second degree murder. See *Lockett*, 82 Ill. 2d at 550. That "force is threatened against the person" is only one element of second degree murder. *Mujkovic*, 2022 IL App (1st) 200717, ¶ 26. There are additional, separate elements, namely, that "the person threatened is not the aggressor" and that "the danger of harm was imminent." *Id.* As we have discussed, the record lacks even minimal evidence to support those additional elements. Thus, by refusing a jury instruction on second degree murder, the circuit court did not abuse its discretion. See *Hampton*, 2021 IL App (5th) 170341, ¶ 100.

¶ 17                                III. CONCLUSION

¶ 18        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 19        Affirmed.